Dear Ms. Sacks:
On behalf of the State Board of Physical Therapy Examiners ("the Board"), your predecessor requested our opinion concerning whether physical therapy services may be provided by business entities owned by unlicensed persons. That inquiry raised the following two questions:
 (1) May a business entity — such as a limited liability company or a corporation — provide physical therapy services by contracting with a licensed physical therapist to treat customers?
 (2) If a corporation may operate such a business, must the corporation be organized as a professional corporation, in which ownership is restricted to licensed persons?
In our opinion, an unlicensed individual or a business entity that is owned by unlicensed individuals may operate a physical therapy business by contracting with a licensed physical therapist or licensed physical therapist assistant to provide services to its customers. While a business that provides physical therapy services may be organized as a corporation, it may not be organized as a professional corporation even if the owners of the entity are licensed. The Board retains authority to regulate the practice of physical therapy by the licensed individuals who provide the services offered by such a business, and to take action against the unlicensed practice of physical therapy.
 I Ownership of Physical Therapy Business
A. License Requirement for Practice
The Maryland Physical Therapy Act prohibits the practice of physical therapy without a license conferred by the Board. Annotated Code of Maryland, Health Occupations Article ("HO"), § 13-401(a). The Act defines the practice of physical therapy as follows:
 (1) "Practice physical therapy" means to practice the health specialty concerned with:
 (i) The prevention of disability in individuals; and
 (ii) The physical rehabilitation of individuals with a congenital or acquired disability.
(2) "Practice physical therapy" includes:
 (i) Performing an evaluation of the physical therapy needs of individuals;
 (ii) Performing and interpreting tests and measurements of neuromuscular and musculoskeletal functions to aid treatment;
 (iii) Planning treatment programs that are based on test findings; and
 (iv) Except as provided in paragraph (3) of this subsection, administering treatment with therapeutic exercise, therapeutic massage, mechanical devices, or therapeutic agents that use the physical, chemical, or other properties of air, water, electricity, sound or radiant energy.
 (3) "Practice physical therapy" does not include using:
(i) X-rays;
(ii) Radioactive substances;
(iii) Electricity for cauterization or surgery.
§ 13-101(i). The unauthorized practice of physical therapy is a misdemeanor. § 13-407
The Act also requires that a physical therapist assistant have a license to practice "limited physical therapy," which is defined in terms identical to the practice of physical therapy, except that "limited physical therapy" does not include the evaluation of a patient's physical therapy needs, the performance and interpretation of tests of neuromuscular and musculoskeletal functions, or the planning of treatment programs. HO § 13-101(h).[1] A licensed physical therapist assistant may practice limited physical therapy "only under the direction of a licensed physical therapist who gives periodic onsite supervision and instruction that is adequate to ensure the safety and welfare of the patient." HO § 13-310(b).
The Act establishes educational, examination, and other prerequisites for licensure as a physical therapist or a physical therapist assistant. HO § 13-302 through § 13-306. Since only an individual has the capacity to meet the educational and examination requirements for licensure, entities such as corporations and limited liability companies are not eligible for licensure.
B. Practice Distinguished from Ownership of Business
To determine whether there is a restriction on the form of business entity that may provide a licensed service, courts look first to the language of the licensing statute. For example, in Dvorine v. CastleburgJewelry Corp., 170 Md. 661, 185 A. 562 (1936), a corporation that operated a store that sold eyeglasses employed a licensed optometrist to administer eye examinations to its customers. There was no charge for an examination if the customer then bought eyeglasses from the company. The State Board of Examiners in Optometry sought an injunction to halt the practice, alleging that the company was practicing optometry without a license.
The Court of Appeals framed the issue as "not whether the Legislature may prohibit a corporation or a lay natural person from furnishing service in a regulated employment through the agency of others, but whether it has done so in this statute," and concluded that "a mere reading of the statute" demonstrated that the Legislature had not prohibited this method of providing optometry services. Dvorine,170 Md. at 673. The Court held that the law did not prohibit an unlicensed person from employing an optometrist and selling the optometrist's services, given that the "practice of optometry" concerned only services that involved the "manual, physical, personal practice of the art." Nor could the Court discern any public policy against such arrangements.[2]Id.
In a later decision, the Court of Appeals acknowledged that, "according to the great weight of authority, state laws generally forbid the practice of medicine or dentistry by a corporation or other entity through licensed employees" — a precept generally known as the "corporate practice of medicine doctrine."[3] Backus v. County Bd. of Appeals,224 Md. 28, 31, 166 A.2d 241 (1960). However, the Court of Appeals has never explicitly embraced this judicially created doctrine, much less extended it beyond medicine and dentistry. Instead, in Dvorine the Court relied on the express language of the licensing statute to conclude that a corporation could provide optometry services through licensed optometrists. The Court's construction of the optometry licensing statute in Dvorine suggests that Maryland courts would be unlikely to apply the corporate practice of medicine doctrine to the practice of physical therapy in the absence of an express statutory mandate.
In other licensing regimes, the Legislature has specifically restricted ownership or management to licensed individuals. For example, the Maryland Dentistry Act includes within the definition of "practice dentistry" the ability to be "a manager, a proprietor, or a conductor of or an operator in any place in which a dental service or dental operation is performed intraorally." HO § 4-101(m). Based on this express statutory limitation, this Office previously concluded that only licensed dentists may own, manage, or conduct the business of a dental office. 81Opinions of the Attorney General ___ (1996) [Opinion No. 96-015 (May 9, 1996)].[4]
Although an unlicensed person may not practice physical therapy, nothing in the Physical Therapy Act expressly prohibits an unlicensed person or entity from owning or operating a physical therapy business. Significantly, the statutory definition of the phrase "practice physical therapy" omits any reference to the ownership or operation of a physical therapy business. HO § 13-101. Nor does any other portion of the Act limit the form of entity through which physical therapy services may be provided. Because the ownership or operation of a physical therapy business by an unlicensed person is not otherwise prohibited by the Act, a corporation, limited liability company, or other business entity may provide physical therapy services through licensed individuals, even if the owners of the business entity are not licensed to provide physical therapy services.
C. Board's Regulatory Authority
We understand that the Board is concerned that an owner of a physical therapy business who is not a licensed physical therapist may interfere with the professional judgment of the physical therapists and physical therapist assistants employed by the business. However, the licensees who provide services as employees of such a business remain obligated to comply with the Physical Therapy Act, as well as the standards of practice and code of ethics promulgated by the Board. HO § 13-206(a)(2); COMAR 10.38.02, 10.38.03. Thus, the Board could prevent lay interference with the professional judgment of its licensees through its standards of practice and code of ethics. For example, the Board could adopt a regulation as part of its code of ethics to prohibit licensees from entering into an agreement or employment relationship that would impede the licensee's exercise of independent judgment in the treatment of a patient.[5]
In addition, if an unlicensed person engages in activities that fall within the definition of "practice physical therapy," the Board may obtain an injunction against that activity. HO § 13-318.1; see also
81 Opinions of the Attorney General ___ (1996) [Opinion No. 96-015 (May 9, 1996)], slip op. at p. 5 n. 7. Such a person would also be subject to criminal prosecution. HO § 13-407.
 II Whether a Physical Therapy Business May Be a Professional Corporation
Closely related to the question of unlicensed ownership of a physical therapy business is the question whether a corporation that provides physical therapy services may be organized as a professional corporation.
A. Professional Corporation
The Professional Service Corporation Act permits members of certain professions to organize their practices as a "professional corporation." Annotated Code of Maryland, Corporations Associations Article ("CA"), § 5-101 et seq. Through this business form, licensed individuals are able to obtain the benefits of limited liability and certain advantages available to corporations under federal tax law. See Lynch v. Buchanan,37 Md. App. 413, 377 A.2d 592 (1977). The use of this form of organization has waned in recent years, as the limited liability company, which has now been authorized by statute in all fifty states,[6]
is frequently a more advantageous form of organization. See A. R. Martin M. D. Carson, Choice of Business Entity: Business, Tax, and OtherNon-Fringe Benefit Considerations, SE66 ALI-ABA 525, 529, 554-59, 585 (2000).
Ownership of stock in a professional corporation is limited to individuals holding licenses in the particular profession and to certain entities owned by licensed individuals. CA § 5-109. With certain exceptions,[7] a corporation that is eligible to be a professional corporation may not organize under any other corporate form. CA § 5-102(a)(2). Thus, if a physical therapy business can be organized as a professional corporation, that is the only corporate form available for such a business[8] and the corporation would be owned and controlled entirely by licensed individuals.
B. "Professional Service"
A business may organize as a professional corporation if it renders a "professional service." The statute defines "professional service" as "a service that may lawfully be rendered only by a person licensed or otherwise authorized by a licensing unit in the State to render the service and that may not lawfully be rendered by a corporation under the Maryland General Corporation Law." CA § 5-101(g)(1) (emphasis added).[9] The statute also includes a non-exclusive list of occupations deemed to provide a "professional service":
(i) An architect;
(ii) An attorney;
(iii) A certified public accountant;
(iv) A chiropractor;
(v) A dentist;
(vi) An osteopath;
(vii) A podiatrist;
(viii) A physician;
(ix) A professional engineer;
 (x) A licensed real estate broker, licensed real estate salesperson, and licensed associate real estate broker;
(xi) A veterinarian; and
(xii) A psychologist.
CA § 5-101(g)(2).[10]
The current version of the Professional Service Corporation Act is derived from the ABA's Model Professional Corporation Supplement. See
Bill Analysis of Senate Bill 176 (1993). The definition of "professional service" in CA § 5-101(g)(1) is identical to that in the Model Act.See Model Professional Corporation Supplement (1984), reprinted in Model Business Corporation Act Annotated (3d ed. 1997 Supplement), at § 3(7) (definition of "professional service"). The commentary to the Model Act states:
 As a general proposition, corporations may not be formed under business corporation acts for the purpose of practicing a "profession" or rendering "professional services." In the absence of a statutory definition, however, the courts have held that not all licensed services are "professional services." As a result, the determination of whether particular licensed services may be rendered by corporations has been made on a case-by-case basis under the state business corporation act and the applicable licensing law.
 The definition of "professional service" in section 3(7) adopts the conclusions reached by courts in this litigation and defines a "professional service" as a licensed service that "may not be lawfully rendered by a corporation under the [Model] Business Corporation Act." All professions that meet this standard may incorporate as professional corporations under this supplement.
Id. at p. PC-8.
The prior section of this opinion concludes that a corporation may provide physical therapy services by contracting with licensed physical therapists. Accordingly, although physical therapy may only be performed by a person licensed by the Board, physical therapy fails to satisfy the definition of "professional service" in CA § 5-101(g)(1) because physical therapy services may lawfully be rendered through a corporation. Moreover, "physical therapist" is not among the professions listed in CA § 5-101(g)(2). Although not conclusive, the omission of physical therapist from that list suggests a legislative understanding that physical therapy services could be provided by a corporation when the Professional Service Corporation Act was enacted — an assessment consistent with the conclusion in the prior section of this opinion.
C. Summary
In our opinion, physical therapy is not a "professional service" under the definition set forth in the Professional Service Corporation Act. Accordingly, a corporation that provides physical therapy services is not required to be organized as a professional corporation. Indeed, given the restrictive language of CA § 5-101(g)(1), such a business maynot be organized as a professional corporation.
 III Conclusion
In summary, an unlicensed person — including a corporation or limited liability company — may operate a physical therapy business and may contract with licensed physical therapists and physical therapist assistants to provide services to the customers of the business. While such a business may be organized as a corporation, it may not be organized as a professional corporation. The Board retains authority to regulate the practice of physical therapy by the licensed individuals who provide the services offered by the business and to take action against the unlicensed practice of physical therapy. In addition, the Board may, in its code of ethics and standards of practice, forbid its licensees from entering into agreements that would impair the exercise of their professional judgment in providing services.
 Very truly yours, J. Joseph Curran, Jr. Attorney General
 Paul J. Ballard Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] See also HO §§ 13-401(b) (prohibition against unlicensed practice of limited physical therapy), 13-407(criminal penalty).
[2] The Court also drew a distinction between optometry, which it characterized as a "mechanical art," and "learned professions" such as law and medicine, in which the term "practice" carried broader connotations. Dvorine, 170 Md. at 669-74.
[3] Those courts that have adopted the corporate practice of medicine doctrine have done so on the theory that impersonal entities cannot meet the training, examination, and character-screening qualifications necessary to obtain a license; accordingly, corporate practice is the unauthorized practice of medicine. See Hayward, Revising Washington'sCorporate Practice of Medicine Doctrine, 71 Wn. L.Rev. 403, 406 (1996). The doctrine is designed to prevent lay control of medical decisions, commercial exploitation of medicine, and physician loyalty divided between the corporate employer and the patient. Based on this doctrine, a majority of the courts that have considered the issue have held that a corporation may not provide medical services by employing licensed physicians; a minority view accepts the distinction between the professional and managerial facets of a medical corporation and permits a corporation to provide medical services through licensed physicians.See Chase-Lubitz, The Corporate Practice of Medicine Doctrine: AnAnachronism in the Modern Health Care Industry, 40 Vand. L.Rev. 445, 467-68 (1987); see also Dobbins, A Survey of State Laws Relating to theCorporate Practice of Medicine, 9 Health Lawyer 5:18 (1997).
[4] Similarly, the corporate ownership of businesses providing other types of licensed professional services is limited or prohibited by statute. See, e.g., Annotated Code of Maryland, Business Occupations and Professions Article ("BOP"), § 2-401 et seq. (entity may operate public accounting business only if it obtains a permit from licensing board; no corporate ownership except by professional corporation); Maryland Rule of Professional Conduct 5.4 (Maryland Rule 16-812 Appendix) (restricting business organizations in which attorneys may practice); Health-General Article, § 19-704 (excepting health maintenance organizations from "prohibition against the corporate practice of medicine").
[5] Other boards have adopted such regulations as part of a code of professional conduct or ethics. See, e.g., COMAR 10.34.10.01B(2) (licensed pharmacist may not practice pharmacy under circumstances that prevent proper exercise of professional judgment); COMAR 10.41.02.04F (licensed audiologist may not provide services without exercising independent professional judgment, regardless of referral source); COMAR10.26.03.04A(10) (licensed acupuncturist must "exercise independent professional judgment in treatment and evaluation of a patient," regardless of source of referral); COMAR 10.43.14.04.(A)(10) (similar provision relating to licensed chiropractors).
In several states that permit corporations to provide medical services through employee physicians, medical licensing boards have issued declaratory rulings or policy statements prohibiting employment relationships that would impair the independent judgment of a physician.See Dobbins, Survey of State Laws Relating to the Corporate Practice ofMedicine, 9 Health Lawyer 5:18 (1997) (describing provisions in Alabama, Louisiana, and Mississippi). A similar provision is part of a South Dakota statute that permits licensed physicians to enter into employment agreements with corporations. See S.D. Stat. 36-4-8.1.
[6] The Maryland Legislature adopted the Maryland Limited Liability Company Act in 1992. See Chapter 536, Laws of Maryland 1992, codified at
CA § 4A-101 et seq. In 1993, that Act was amended to permit limited liability companies to provide the same professional services that a professional corporation may provide. See Chapter 459, Laws of Maryland 1993; CA § 4A-203(10) (authorizing limited liability companies to render professional services).
[7] The statute expressly exempts architects, professional engineers, licensed real estate from this restriction brokers, licensed real estate salespersons, licensed associate real estate brokers, and veterinarians. CA § 5-102(a)(3). See footnote 10.
[8] Of course, those individuals could also choose to form a limited liability company or a partnership instead of a corporation.
[9] A 1993 revision of the Professional Service Corporation Act made a significant change in this definition. Chapter 413, Laws of Maryland 1993. A staff summary in the legislative file states that "major substantive change" made by the 1993 law was to "clearly defin[e] the professional groups subject to the Act." Bill Analysis for Senate Bill 176 (1993).
Prior to the 1993 revision, "professional service" was defined as "any personal service to the public which: (1) requires a license for its performance; or (2) a corporation was not legally permitted to perform before July 1, 1969." CA § 5-101(e) (1993 Repl. Vol.) (emphasis added). The 1993 amendment essentially substituted the conjunction "and" for the conjunction "or" in the definition and thus restricted the term to professions that satisfy both criteria. Also, unlike the current form of the Act, the prior version of the statute did not make the professional corporation the sole form of corporate organization for entities that qualified. Thus, after the 1993 revision, this form of organization was available to a smaller class of licensed occupations and, for those that qualified, it became the only form of corporate organization.
Professional corporations organized under the old law are grandfathered under the new law. CA § 5-112(c).
[10] The list of professions in CA § 5-101(g)(2) is not simply illustrative of the definition in CA § 5-101(g)(1), but also includes some professions that would not otherwise qualify for organization as a professional corporation. When the revision of the Professional Services Corporation Act was first proposed in 1991, the revised act omitted from this list certain professions for which corporate practice was already authorized by statute: e.g., architects and professional engineers. See
BOP §§ 3-402; 14-401. A summary of the proposed statute submitted by representatives of the Maryland State Bar Association indicated that those professions were excluded from the list of professional services that could be provided through a professional corporation because they did not satisfy the new definition of "professional service." See Summaryof Proposed Professional Service Corporation Statute (February 20, 1991) in legislative file for House Bill 1105 (1991). When the revised act passed two years later, some of those professions had been added to the enumerated list in CA § 5-101(g)(2); in addition, those professions were granted a dispensation from the Act's general prohibition against the use of other corporate forms by professions eligible for organization as a professional corporation. See CA § 5-102(a)(3). In any event, physical therapy is not among the enumerated professional services for which this exception was made.
 *Page 249